IN THE DISTRICT COURT OF THE UNITED STATES

FOR THE DISTRICT OF SOUTH CAROLINA

GREENVILLE DIVISION

| | |
|---|---|
| Willie Junior Hines, #240466, ) | |
| ) | Civil Action No. 6:12-cv-1834-GRA-KFM |
| Plaintiff, ) | |
| ) | |
| vs. ) | **REPORT OF MAGISTRATE JUDGE** |
| ) | |
| Chad Robinson; Adetero Sobowale; ) | |
| Amy Enloe; Terri Comp; Dave Tatarsky; ) | |
| Michael Laubshire; Robert Ward; ) | |
| Warden Michael McCall; Timothy P. ) | |
| Close, MD; W.J. Bayard, MD; and ) | |
| John Doe, Kirkland Medical Inst., ) | |
| ) | |
| Defendants. ) | |
| ) | |

The plaintiff, a state prisoner proceeding *pro se*, seeks relief pursuant to Title 42, United States Code, Section 1983. The defendants are employees of the South Carolina Department of Corrections ("SCDC"), with the exception of Drs. Close and Bayard, who are private radiologists with Imagecare, LLC, and Terri Camp,[1] who is a claims representative with the South Carolina Insurance Reserve Fund assigned to investigate the plaintiff's medical negligence lawsuit filed in state court. Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Local Civil Rule 73.02(B)(2)(d) DSC, this magistrate judge is authorized to review all pretrial matters in cases filed under Title 42, United States Code, Section 1983, and submit findings and recommendations to the District Court.

On October 19, 2012, Drs. Close and Bayard filed a motion for summary judgment (doc. 50). By order filed October 22, 2012, pursuant to *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975), the plaintiff was advised of the summary judgment dismissal

---

[1] Ms. Camp's name is misspelled in the caption as "Comp." The Clerk of Court is directed to amend the caption to reflect the correct spelling.

procedure and the possible consequences if he failed to adequately respond to the motion. On November 19, 2012, the SCDC defendants and Ms. Camp filed a motion for summary judgment (doc. 68). A second *Roseboro* Order was issued on November 20, 2012. The plaintiff filed responses in opposition on November 26 and December 14, 2012 (docs. 72 and 84), and the SCDC defendants and Ms. Camp filed a reply on December 21, 2012 (doc. 86). The plaintiff filed his own motions for summary judgment on November 26 and December 14, 2012 (docs. 76 and 83). The defendants filed responses in opposition on December 21, 2012, and January 2, 2013 (docs. 87 and 89). Thereafter, the plaintiff filed a motion for clarification (doc. 91), accusing counsel for the SCDC defendants of "fraudulently using" the first *Roseboro* order, and renewing his motion for summary judgment.

## **FACTS PRESENTED**

The plaintiff is incarcerated at Perry Correctional Institution ("PCI"), which is part of SCDC. In his complaint, the plaintiff alleges that on April 8, 2010, he injured his wrist in a fall during an exercise class (comp. at 3). The class instructor, defendant Robinson, thought it was sprained and did not prepare an incident report (*id*.). His wrist continued to hurt, so the plaintiff went to the PCI medical unit on April 10th. Again, the wrist was diagnosed as a sprain by defendant nurse Sobowale (*id*.). As shown by SCDC medical records provided by the plaintiff, he returned for x-rays and a splint on April 12th (doc. 1-3, pp. 6-7, encounter 1487). The next day, Dr. Close examined the x-rays provided by SCDC and prepared reports stating the wrist was fractured (*id.*, pp. 9-10). On April 19th, the medical unit noted the fracture, kept the plaintiff in the splint, and scheduled him for the orthopedic clinic (*id.*, p. 7, encounter 1490). The records show the plaintiff had a cast in place when he was again x-rayed on April 26th, and Dr. Bayard noted "satisfactory alignment following re-casting" (*id.*, p. 11). After his cast was removed, another x-ray was taken, and on June 7th, Dr. Close opined that the fracture was healing (doc. 72-4, pp. 5-6).

A follow-up x-ray read by Dr. Bayard on July 19th also showed a healed fracture (*id.*, p. 7). During this period, the medical records show that the plaintiff was provided pain medication and had access to the medical unit, including for other visits unrelated to his wrist injury (doc. 1-3, pp. 6-8). The records provided by the plaintiff also include two SCDC Physician's Transfer Notes that show the plaintiff had additional follow-up visits with the orthopedic clinic in October and December 2010 (*id.*, pp. 3-4).

The plaintiff alleges the defendants were deliberately indifferent to his broken wrist and associated pain. While he lists a number of defendants in the caption of his complaint, he specifically names only defendants Robinson and Sobowale in his allegations and states that "the other Defendants named in this action knew of the wrong and ratified and aided in the cover up of this act" (comp. at 4). The defendants argue that the complaint should be dismissed against these "other defendants" as the plaintiff has made no personal allegations of wrongdoing against them. They further argue that the plaintiff's claim fails on the merits as he received constitutionally sufficient medical care. This court agrees.

## **APPLICABLE LAW AND ANALYSIS**

Federal Rule of Civil Procedure 56 states, as to a party who has moved for summary judgment: "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a). As to the first of these determinations, a fact is deemed "material" if proof of its existence or nonexistence would affect the disposition of the case under the applicable law. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). An issue of material fact is "genuine" if the evidence offered is such that a reasonable jury might return a verdict for the non-movant. *Id.* at 257. In determining whether a genuine issue has been raised, the court must construe all inferences and

ambiguities against the movant and in favor of the non-moving party. *United States v. Diebold, Inc.,* 369 U.S. 654, 655 (1962).

The party seeking summary judgment shoulders the initial burden of demonstrating to the district court that there is no genuine issue of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986). Once the movant has made this threshold demonstration, the non-moving party, to survive the motion for summary judgment, may not rest on the allegations averred in his pleadings; rather, he must demonstrate that specific, material facts exist that give rise to a genuine issue. *Id.* at 324. Under this standard, the existence of a mere scintilla of evidence in support of the the plaintiff's position is insufficient to withstand the summary judgment motion. *Anderson*, 477 U.S. at 252. Likewise, conclusory allegations or denials, without more, are insufficient to preclude the granting of the summary judgment motion. *Ross v. Communications Satellite Corp.,* 759 F.2d 355, 365 (4th Cir. 1985), *overruled on other grounds,* 490 U.S. 228 (1989). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Anderson,* 477 U.S. at 248.

*Pro se* complaints are held to a less stringent standard than those drafted by attorneys, *Gordon v. Leeke*, 574 F.2d 1147, 1151 (4th Cir.1978), and a court is charged with liberally construing a complaint filed by a pro se litigant to allow for the development of a potentially meritorious case. *See Hughes v. Rowe*, 449 U.S. 5, 9 (1980). The requirement of liberal construction, however, does not mean the court can ignore a clear failure to allege facts that set forth a claim currently cognizable in a federal district court. *Weller v. Dep't. of Soc. Servs.*, 901 F.2d 387 (4th Cir.1990).

***Personal Allegations and Supervisory Liability***

Federal Rule of Civil Procedure 8(a) sets forth a liberal pleading standard, which requires only a " 'short and plain statement of the claim showing the pleader is

4

entitled to relief,' in order to 'give the defendant fair notice of what . . . the claim is and the grounds upon which it rests.' " *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). The only defendants who are specifically named in the complaint's Statement of Facts are Robinson and Sobowale (comp. at 3). The plaintiff makes no specific allegations against any other defendant, but instead claims that they "knew of the wrongs and ratified and aided in the cover-up" (*id*. at 4). This general allegation is clearly insufficient to comply with Rule 8, as it does not put these defendants on fair notice of what they each allegedly did to violate the plaintiff's constitutional rights nor how they each could be held liable. "Where a complaint alleges no specific act or conduct on the part of the defendant and the complaint is silent as to the defendant except for his name appearing in the caption, the complaint is properly dismissed, even under the liberal construction to be given *pro se* complaints." *Lewis v. Lappin,* No. 3:10cv426, 2011 WL 2414418, at *2 (E.D. Va. June 13, 2011) (citation omitted). *See Vinnedge v. Gibbs*, 550 F.2d 926, 928 (4th Cir. 1977) ("Having failed to allege any personal connection between [the defendant] and any denial of [the plaintiff's] constitutional rights, the action against him must fail.").

The plaintiff's claims against defendant Tatarsky, who is General Counsel for the SCDC; defendant McCall, who was the Warden of PCI at the time of the events at issue here; and defendant Ward, who is the Director of Operations for the SCDC, appear to be based on their status as supervisory officials. To the extent the plaintiff seeks to hold these defendants liable in their supervisory capacities, the doctrine of respondeat superior generally is inapplicable to Section 1983 suits. *Monell v. Department of Social Services*, 436 U.S. 658, 694 (1978); *Vinnedge*, 550 F.2d at 928-29. The plaintiff must establish three elements to hold a supervisor liable for a constitutional injury inflicted by a subordinate: (1) the supervisor had actual or constructive knowledge that a subordinate was engaged in conduct that posed "a pervasive and unreasonable risk" of constitutional injury to people

like the plaintiff; (2) the supervisor's response was so inadequate as to constitute deliberate indifference or tacit authorization of the subordinate's conduct; and (3) there is an "affirmative causal link" between the supervisor's inaction and the plaintiff's constitutional injury. *Shaw v. Stroud*, 13 F.3d 791, 799 (4th Cir. 1994). In the context of a claim for denial of medical care against non-medical supervisory defendants, the plaintiff must show that they failed to promptly provide needed medical treatment, deliberately interfered with prison doctors' treatment, or tacitly authorized or were indifferent to the prison physicians' misconduct. *Miltier v. Beorn*, 896 F.2d 848, 854 (4th Cir. 1990) (citations omitted). The plaintiff has failed to make the required showing here.

Based upon the foregoing, defendants Enloe,[2] Camp, Tatarsky, Laubshire,[3] Ward, McCall, Close, Bayard, and Doe should be dismissed from this action.

### *Deliberate Indifference to Serious Medical Needs*

The plaintiff alleges a claim for deliberately indifference to his serious medical needs. Although the Constitution does require that prisoners be provided with a certain minimum level of medical treatment, it does not guarantee to a prisoner the treatment of his choice." *Jackson v. Fair*, 846 F.2d 811, 817 (1st Cir. 1988). The government is "obligat[ed] to provide medical care for those whom it is punishing by incarceration." *Estelle v. Gamble,* 429 U.S. 97, 102 (1976). This obligation arises from an inmate's complete dependency upon prison medical staff to provide essential medical services. *Id.* The duty to attend to prisoners' medical needs, however, does not presuppose "that every claim by a prisoner that he has not received adequate medical treatment states a violation of the Eighth Amendment." *Id.* at 105. Instead, it is only when prison officials have exhibited "deliberate indifference" to a prisoner's "serious medical needs" that the Eighth

---

[2]Defendant Enloe is a Nurse Practitioner at PCI.

[3]Defendant Laubshire is an attorney employed in the Office of General Counsel for the SCDC. He previously defended a grievance filed by the plaintiff.

Amendment is offended. *Id.* at 104. As such, "an inadvertent failure to provide adequate medical care" will not comprise an Eighth Amendment breach. *Id.* at 105-106.

In order to state a claim, "[a] plaintiff must satisfy two elements . . . : he must show a serious medical need and he must prove the defendant's purposeful indifference thereto." *Sires v. Berman*, 834 F.2d 9, 12 (1st Cir. 1987). A medical need is "serious" if "it is diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would recognize the necessity for a doctor's attention." *Gaudreault v. Municipality of Salem, Mass.,* 923 F.2d 203, 208 (1st Cir. 1990). "Deliberate indifference may be demonstrated by either actual intent or reckless disregard. A defendant acts recklessly by disregarding a substantial risk of danger that is either known to the defendant or which would be apparent to a reasonable person in the defendant's position." *Miltier v. Beorn*, 896 F.2d 848, 851-52 (4th Cir. 1990) (citation omitted). "It is only such indifference that can offend 'evolving standards of decency' in violation of the Eighth Amendment." *Estelle*, 429 U.S. at 106. Mere negligence or malpractice does not violate the Eighth Amendment. *Id.* Moreover, disagreements between an inmate and a physician over the inmate's proper medical care do not state a Section 1983 claim unless exceptional circumstances are alleged. *Wright v. Collins*, 766 F.2d 841, 849 (4th Cir. 1985).

The plaintiff appears to argue that the SCDC defendants knew or should have known from the outset that his wrist was broken and not sprained, and they deliberately delayed in treating it as such. He complains that defendant Robinson failed to prepare an incident report immediately following the injury and implies that this failure was a deliberate effort to deny the plaintiff appropriate treatment. However, the plaintiff admits in his complaint that Robinson examined his wrist immediately after the injury, assessing it as a sprain, and that the plaintiff himself did not request medical attention until two days later: "My wrist kept hurting so I told officer Kevein to call the shift officer on April 10, 2010, at about 1:30 p.m. to get me to medical" (comp. at 3). Further, his medical

encounter on April 10th shows that his wrist examination revealed no obvious sign of a fracture and that he was instructed to return if his condition worsened (doc. 1-3, p. 6, encounter 1486). He returned on the 12th, and his wrist was placed in a splint and x-rayed (*id.*, pp. 6-7, encounter 1487), with the x-rays sent to Dr. Close. Not until the PCI medical staff reviewed Dr. Close's x-ray report on April 19th (*id.*, p. 7, encounter 1490) were they aware of the presence of a fracture. Once that information was received, the subsequent records reveal that the PCI medical staff changed the plaintiff's treatment regimen from that for a sprain to one designed to heal the fracture. Between April 19, 2010, and February 10, 2011, the plaintiff had at least six encounters with the SCDC medical staff concerning his wrist, including outside visits to the orthopedic clinic (doc. 68-1, Enloe aff. ¶¶ 5-17; doc. 1-3, pp. 3-11). He was given a splint, then fitted with a cast, then provided a removable brace, and his care included pain medication (doc. 68-1, Enloe aff. ¶¶ 5-17; doc. 1-3, pp. 3-11). The plaintiff has failed to show any evidence of the defendants' purposeful indifference to his serious medical needs. Based upon the foregoing, the plaintiff's Eighth Amendment claim fails as a matter of law.

*Medical Malpractice*

To the extent the plaintiff attempts to bring a cause of action of medical malpractice against Drs. Close and Bayard, such claims are not actionable under Section 1983. *See Estelle*, 429 U.S. at 106 ("Medical malpractice does not become a constitutional violation merely because the victim is a prisoner."). In any event, the plaintiff has failed to raise any specific factual allegations against these defendants in his complaint and certainly nothing that would suggest conduct amounting to negligence or medical malpractice. Accordingly, this cause of action fails.

*Immunity*

To the extent the SCDC defendants are sued in their official capacities, they correctly assert that they are entitled to Eleventh Amendment immunity from monetary

damages. As arms of the state, they are entitled to sovereign immunity and are not "persons" under Section 1983. *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 70-71 (1989). Although a State may waive sovereign immunity, *Lapides v. Board of Regents*, 535 U.S. 613 (2002), the State of South Carolina has specifically denied this waiver for suit in federal district court. *See* S.C. Code Ann. § 15-78-20(e). These defendants in their individual capacities are also entitled to qualified immunity from civil damages, as described in *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982) and its progeny, as the plaintiff has failed to show that the defendants violated any of his clearly established constitutional or statutory rights.

### *Motion for Clarification*

In his motion for clarification (doc. 91), the plaintiff accuses defense counsel for the SCDC defendants and Ms. Camp of "fraudulently using" the first *Roseboro* Order that was issued by the court after Drs. Close and Bayard filed their motion for summary judgment. However, this court issued two *Roseboro* Orders, one after each motion for summary judgment by the defendant doctors and the SCDC defendants, and the plaintiff made timely responses as directed in both *Roseboro* Orders. Accordingly, this motion is denied as moot.

## **CONCLUSION AND RECOMMENDATION**

Now, therefore, based upon the foregoing,

IT IS ORDERED that the plaintiff's motion for clarification (doc. 91) is denied.

IT IS RECOMMENDED that the defendants' motions for summary judgment (docs. 50 and 68) be granted.  IT IS FURTHER RECOMMENDED that the plaintiff's motions for summary judgment (docs. 76 and 83) be denied.

Kevin F. McDonald
United States Magistrate Judge

February 12, 2013
Greenville, South Carolina

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge.  Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections.  "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'"  *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *see* Fed. R. Civ. P. 6(a), (d).  Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

> Larry W. Propes, Clerk
> United States District Court
> 300 East Washington St, Room 239
> Greenville, South Carolina 29601

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.**  28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).